UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CAROLINA HOLDINGS, INCORPORATED,
d/b/a Detroit Paneling Systems,
Incorporated,

*Petitioner,*

v.

NATIONAL LABOR RELATIONS BOARD,

*Respondent.*

No. 00-1548

NATIONAL LABOR RELATIONS BOARD,

*Petitioner,*

v.

CAROLINA HOLDINGS, INCORPORATED,
d/b/a Detroit Paneling Systems,
Incorporated,

*Respondent.*

No. 00-1745

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board.
(7-CA-39842)

Argued: January 23, 2001

Decided: March 8, 2001

Before WILKINSON, Chief Judge, and WILKINS and
KING, Circuit Judges.

_____

Enforcement granted by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Barry Todd Meek, HUNTON & WILLIAMS, Richmond, Virginia, for Carolina Holdings. Jeffrey Lawrence Horowitz, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board. **ON BRIEF:** Gregory B. Robertson, HUNTON & WILLIAMS, Richmond, Virginia, for Carolina Holdings. Leonard R. Page, General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Frederick C. Havard, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

The National Labor Relations Board (the Board) found that Carolina Holdings, Inc. violated the National Labor Relations Act (NLRA) and ordered remedial measures. Carolina Holdings petitions for review, contending that the record lacks substantial evidence to support the Board's conclusions. The Board cross-petitions for enforcement of its decision and order. We find that substantial evidence supports the Board's conclusions, and we therefore grant enforcement of its decision and order.

I.

In 1997, the United Brotherhood of Carpenters and Joiners ("the Carpenters Union") initiated an effort to unionize the workers at Detroit Paneling Systems, Inc. (DPS), a subsidiary of Carolina Holdings. DPS openly opposed this effort. While the unionization drive was proceeding, DPS fired two employees who had expressed pro-union views. The Board determined that these discharges were retalia-

tory, in violation of the NLRA. *See* 29 U.S.C.A. § 158(a)(3) (West 1998). Carolina Holdings challenges these findings, contending that the employees in question were fired for legitimate reasons unrelated to the unionization effort.

### A.   *The Discharge of Edward Musser*

Musser was a union "salt," an employee of the Carpenters Union who accepted a position at DPS in order to promote the unionization effort. It is undisputed that DPS did not learn that Musser was a union salt until after his discharge. It is likewise undisputed that Musser was an outstanding employee.

On May 15, shortly after Musser was hired by DPS, he attended a company-wide meeting led by Richard Kramer, DPS' vice president for human resources. The two purposes of this gathering were to inform employees about benefits offered by DPS and to discourage them from supporting the union. During the meeting, Musser corrected some of Kramer's statements about benefits available through the union.

After the meeting, Kramer introduced himself to Musser. Musser testified that his plant manager, Timothy Oliver, later told him that his comments "shook up" Kramer and that Kramer wanted to know if Musser belonged to a union. J.A. 133. Oliver disputed Musser's testimony, averring that he told Musser that Kramer appreciated Musser's input, that another supervisor had praised Musser, and that the company planned to promote him. The administrative law judge (ALJ) who heard this conflicting testimony found that Musser was more credible than Oliver.

A few days after the May 15 meeting, Debbie Demick, a human resources manager at DPS, confronted Musser about alleged falsehoods in his job application. In particular, Demick disputed Musser's statement that his position with a previous employer ended in April 1997, pointing out that he had been on leave of absence from that company since July 1996. Musser was sent home at the end of the meeting and was told the next day that he was fired.

The Board adopted the ALJ's finding that the concerns expressed about Musser's application were pretextual and that DPS actually fired Musser because of his pro-union remarks. In support of this finding, the Board noted that the timing of Demick's inquiry was suspicious and that Musser's description of his relationship with his prior employer was not technically false.

## B.   *The Discharge of Cedrick Greenhill*

Greenhill, the other employee at issue here, made pro-union comments during an impromptu debate the day after the May 15 meeting. Greenhill's foreman, Casey Treadaway, was also involved in this debate; the next working day, he caused Greenhill to be fired.

Shortly before lunchtime on the day Greenhill was fired, Treadaway told Greenhill to go home for the day, ostensibly because he was working too slowly. In response, Greenhill left the manufacturing area and went to the lunchroom to be with friends. While he was there, Treadaway approached him and delivered a pink slip signed by Oliver. Treadaway testified that Greenhill was chronically slow, that he became belligerent when told to go home, and that he was ultimately terminated for refusing to leave the plant. The ALJ determined that Treadaway was not credible, however, and found (based on Greenhill's testimony) that Treadaway had praised Greenhill's work and that Greenhill's "alleged insubordination consisted of no[ ] more than sitting in the lunchroom after he was told to go home." *Id.* at 38.

The Board adopted the ALJ's findings, with one exception not pertinent here. Based on these findings, the Board concluded that DPS "seized upon a trivial offense to discriminate against a union activist and 'send a message' to other employees who supported the Union." *Id.* at 33.

## C.   *Additional NLRA Violations*

In addition to finding that DPS unlawfully discharged two employees, the ALJ determined that DPS supervisors twice violated the NLRA by making threatening statements. *See* 29 U.S.C.A. § 158(a)(1) (West 1998). First, the ALJ found that Oliver unlawfully

questioned Musser after the May 15 meeting; as described above, Oliver said that Kramer was perturbed by Musser's comments and wanted to know whether Musser was a union member. Second, the ALJ found that Treadaway violated § 158(a)(1) during a profanity-laced diatribe against unionism that included threats about how management would treat DPS workers if they joined the union. The Board adopted both of these findings.*

## II.

On review of an agency proceeding, we will uphold its factual determinations and its applications of law to fact if the record contains substantial evidence to support them. *See Sam's Club v. NLRB*, 173 F.3d 233, 239 (4th Cir. 1999). Moreover, we must accept an ALJ's credibility determinations unless "exceptional circumstances" are present. *Fieldcrest Cannon, Inc. v. NLRB*, 97 F.3d 65, 69 (4th Cir. 1996) (internal quotation marks omitted). Having examined the record and the parties' briefs in light of these standards, and having had the benefit of oral argument, we affirm the decision of the Board and we grant the petition for enforcement of its decision and order.

*ENFORCEMENT GRANTED*

---

*Carolina Holdings asserted at oral argument that it was unclear whether the Board adopted the finding regarding Oliver. We reject this assertion, as it is refuted by both the opinion of the Board and its proposed order. In particular, we note that this order (which we are enforcing) prohibits Carolina Holdings from "[c]oercively interrogating any employee about union support or union activities." J.A. 34.